UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



JAMES BARRETT,

                                                  Plaintiff,        17-CV-6688
v.                                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.

## INTRODUCTION

Plaintiff, James Barrett, brought this action pursuant to Title II and Title XVI of the Social Security Act seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 10, 13. For the reasons that follow, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is GRANTED, the Commissioner's motion (ECF No. 13) is DENIED, and the matter is remanded to the Commissioner for further proceedings.

## BACKGROUND

On December 15, 2014, and December 19, 2014, Plaintiff filed an application for DIB and SSI alleging disability beginning on March 3, 2010. Administrative Record ("Tr.") at 73, 159, 163, 207. He later amended his onset date to August 1, 2014. Tr. at 38. After the applications were denied, Plaintiff timely requested a hearing. Tr. at 95-97.

On May 26, 2016, Plaintiff appeared with his attorney, Dorollo Nixon, Esq., and testified at a hearing before Administrative Law Judge ("the ALJ"), Lisa B. Martin. Tr. at 35-72. A

1

Vocational Expert ("VE"), Jacquelyn Schabacker, also testified at the hearing. Tr. at 59-72. The ALJ issued an unfavorable decision on February 10, 2017. Tr. at 14-34. Plaintiff then timely requested review by the Appeals Council, which the Council denied on August 9, 2017, making the ALJ's decision the final decision of the Commissioner. Tr. at 1-3. Plaintiff subsequently filed this lawsuit.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial

gainful work activity. *See* 20 C.F.R. § 404.1520(b).[1] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

---

[1] Because the DIB and SSI regulations mirror each other, the Court only cited the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

3

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.  **The ALJ's Decision**

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 1, 2014. Tr. at 19. At step two, the ALJ found that Plaintiff suffered from several severe impairments: mild neurocognitive disorder with memory loss, history of traumatic brain injury, hypertension, migraine headaches, depression, and anxiety. *Id.* At step three of the analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or equal the criteria of any listing. Tr. at 19-21. The ALJ then determined that Plaintiff retained the residual functioning capacity ("RFC") to perform a full range of work at all exertional levels with several limitations. Tr. at 21. Specifically, the ALJ found that Plaintiff should avoid climbing all ladders, ropes, or scaffolds, dangerous work hazards that include unprotected heights, exposed moving machinery, or extreme heat and humidity. The ALJ also limited Plaintiff to routine, simple work that does not require a fast assembly quota pace and GED reasoning levels of not more than "1" or "2," which can include a moderate noise work environment, and occasional interaction with coworkers, supervisors and the public. *Id.* At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a floor waxer. Tr. at 26. Even though she determined that Plaintiff could perform his past relevant work, the ALJ then proceeded to step five, where she determined that there were jobs in the national economy that a person of Plaintiff's age, education and work experience could perform. Tr. at 27. Specifically, the ALJ determined that Plaintiff could work as a housekeeping cleaner or a photo copy machine operator. *Id.*

4

## II. Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly disregarded findings of his examining psychologist, Dr. Barlow, regarding Plaintiff's ability to be off task and absent from work. ECF No. 10-1. Because the Court agrees with Plaintiff, it need not reach conclusions on Plaintiff's remaining arguments.[2]

In assessing Plaintiff's mental RFC, the ALJ expressly referenced the expert opinions of four medical sources: Drs. Hartman and Slowik, whose opinions she provided partial weight, and Drs. Marks and Barlow, whose opinions she assessed with great weight. Tr. at 25-26. The ALJ's consideration of Dr. Barlow's opinion is what this Court is most concerned with.

Plaintiff saw Dr. Barlow in May and June of 2016 as a result of a referral from Dr. Wells, who examined Plaintiff regarding symptoms he continued to experience as a result of a traumatic brain injury he had suffered as a child. Tr. at 400, 413. Over the course of four visits, Dr. Barlow conducted several comprehensive tests, after which he diagnosed Plaintiff with dysthymic disorder and personality disorder with paranoid and schizotypal features. Tr. at 417. As a result of the examination, Dr. Barlow completed a mental health questionnaire wherein he opined that Plaintiff had medium limitations in his ability to maintain attention and concertation, perform activities within a schedule, maintain regular attendance, complete a normal workday and workweek without interruptions from psychological symptoms, and perform at a consistent pace without an unreasonable number of length of rest periods.[3] Tr. at 418. Dr. Barlow also opined that such

---

[2] Plaintiff has identified several additional reasons why he contends the matter should be remanded. ECF No. 10-1. However, because the Court has determined, for the reasons that follow, that remand of this matter for further administrative proceedings is necessary, it declines to address Plaintiff's remaining arguments. *See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to address Plaintiff's remaining arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined that remand was warranted).

[3] The questionnaire form completed by Dr. Barlow describes medium limitations as those that cause "more than slight but less that a serious limitation. The [i]ndividual is still able to function satisfactorily for certain portion of the day

5

limitations would cause Plaintiff to be off task more than 20%, but less than 33% of the workday, and absent from work three or more days per month due to his mental impairments. *Id.* at 419.

The ALJ afforded great weight to this opinion and acknowledged that it was consistent with Plaintiff's history of memory and concertation deficits, as well as his difficulties with social interaction. Tr. at 26. However, while noting Dr. Barlow's opinion that Plaintiff would be off task more than 20% of the time, the ALJ, nonetheless, failed to incorporate this portion of the opinion into RFC. It is true that the RFC assessment does not need to "perfectly correspond" with any of the medical source opinion that [an] ALJ cites in her decision. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). However, "[w]hile the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [s]he cannot simply selectively choose evidence in the record that supports [her] conclusions." *Gecevic v. Sec'y of Health and Human Servs.*, 882 F.Supp. 278, 286 (E.D.N.Y. 1995) (citing *Fiorella v. Heckler*, 725 F.2d 174, 176 (2d Cir.1983)). That is exactly what the ALJ did here when she recognized only a portion of Dr. Barlow's medical opinion regarding Plaintiff's medium limitations in most domains, while, at the same time, ignoring his findings about Plaintiff's off task time and failing to explain her reasons for doing so. *Younes v. Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (although an ALJ is free to credit only a portion of a medical opinion, "when doing so smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an [ALJ] must have a sound reason for weighting portions of the same-source opinions differently") (internal citations omitted). This was error because Dr. Barlow's opinion as to Plaintiff's off task limitations and his level of absenteeism was particularly significant to his disability determination, and, thus, should have been considered by the ALJ.

---

and/or perform the tasks satisfactorily on some of the occasions. The approximate of loss would be more than 20% for the particular activity but less than 1/3 of the day. (33%)." Tr. at 418.

*Baez v. Comm'r of Soc. Sec.*, 17-CV-3595(MKB), 2018 WL 4688951, at *8 n.5 (E.D.N.Y. Sept. 28, 2018) ("[A] medical opinion stating that a social security claimant likely may miss work multiple times per month is probative of the claimant's RFC and determining whether the claimant is disabled under the Social Security Regulations."). Also, the ALJ's recognition of Plaintiff's off task time was critical to her formulation of the hypotheticals for the VE and the VE's ultimate determination of the availability of jobs that Plaintiff could perform because the VE here testified that any employment with off task time greater than 10% would not be tolerated. AR. at 70-71; *see Beck v. Colvin*, No. 6:12-CV-06495 (MAT), 2013 WL 5533571, at *6 (W.D.N.Y. Oct.7, 2013) ("Vocational experts in Social Security cases have testified that missing three or more days of work per month renders a claimant unemployable, as that level of absenteeism is beyond the bounds of reasonable employer tolerance.").

Dr. Barlow's findings, particularly the ones related to Plaintiff's memory deficits, interest this Court for another reason. While opining that Plaintiff's foundational skills of working memory and processing speed were in the mental retardation range, and ultimately diagnosing Plaintiff with dysthymic disorder and personality disorder with paranoid and schizotypal features, Dr. Barlow expressed suspicions about Plaintiff's possible malingering and lack of effort during the testing, which, he speculated, were to secure a social security disability. Tr. at 416. In fact, on almost all of the tests performed, Dr. Barlow noted that Plaintiff's very poor scoring could be indicative of either malingering, "dramatic cry for help," severe learning disability, or dementia. Tr. at 415-16. Because Dr. Barlow was the only examining psychologist in the record whose opinion the ALJ assigned great weight to and who performed such comprehensive multi-day testing of Plaintiff's memory and cognitive deficits, resolving his suspicions about Plaintiff's possible malingering was crucial to the ALJ's consideration of Plaintiff's deficits prior to her

formulating his RFC.[4] Being obligated to make every reasonable effort to develop the record in light on the non-adversarial nature of the benefits proceedings, *Shaw v. Chafer*, 221 F.3d 126, 134 (2d Cir. 2000), the ALJ here should have reconciled this ambiguity of Dr. Barlow's opinion prior to relying on it in her analysis of Plaintiff's RFC. *See Velez v. Astrue*, No. 11-CV-881S, 2013 WL 321552, at *6 (W.D.N.Y. Jan. 28, 2013) (to clear the ambiguity that Plaintiff may have been malingering, the ALJ was supposed to seek clarification or supplement the record from Plaintiff's psychologist); *see also Fofana v. Astrue*, 2011 WL 4987649, at *18 ("The ALJ must seek additional evidence or clarification when the 'report from [Plaintiff's] medical source contains a conflict or ambiguity that must be resolved . . . .'") (internal citation omitted).

That is not to say that the ALJ's weight afforded to Dr. Barlow was inherently wrong or that the record was insufficient to support Plaintiff's memory loss and other cognitive deficits. In fact, aside from suspicions of Plaintiff's possible malingering, Dr. Barlow's findings regarding Plaintiff's memory and cognitive limitations are consistent with opinions of the other medical sources recognized by the ALJ and with Plaintiff's own account of his problems with memory retention. For instance, like Dr. Barlow, Dr. Slowik noted Plaintiff's memory and concentration deficits during her examination specifically pointing to Plaintiff having difficulties with finding words, recall and attention, and, as a result, requiring repetition of instructions. Tr. at 320. She opined that Plaintiff's attention, concentration, ability to maintain a regular schedule, and adequately deal with stress were moderately limited, and his ability to learn new tasks and perform

---

[4] The ALJ also provided great weight to Dr. Marks, state agency psychological consultant. Tr. at 26. It has been well-recognized that "[i]n the context of a psychiatric disability diagnosis, it is improper [for the ALJ] to rely on the opinion of a non-treating, non-examining doctor because the inherent subjectivity of a psychiatric diagnosis requires the physician rendering the diagnosis to personally observe the patient. . . . [T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little, if any, weight." *Fofana v. Astrue*, No. 10 Civ. 0071(LTS)(THK), 2011 WL 4987649, at *20 (S.D.N.Y. Aug. 9, 2011), *report and recommendation adopted*, No. 10 CIV. 71 LTS THK, 2011 WL 5022817 (S.D.N.Y. Oct. 19, 2011) (internal citations omitted).

complex tasks independently were markedly limited. Tr. at 322-23. Dr. Hartman also opined that Plaintiff was having memory deficits and limitations in maintaining attention and concentration.[5] Tr. at 309. Additionally, Plaintiff's own account of difficulties he was having with memory retention support his claim of substantial memory and cognitive deficits. Even though he was able to do basic activities such as cooking, cleaning, and laundry, Plaintiff's performance of these activities had to be altered to accommodate for his failing memory and increasing deficits in attention and concentration. Even though Plaintiff developed a system of keeping things organized to assist him with memory loss, it was still difficult for him to remember appointments and dates when he were to take medication or pay child support. Tr. at 376, 379. He admitted having to lie to compensate for his memory deficits. Tr. at 308. Plaintiff required assistance in managing funds, and supervision from his father or brother with daily activities because he often forgot food in the oven when he cooked, or soap when he did laundry. Tr. at 294, 322-23. Plaintiff testified that he had stopped driving, and that his memory decline had affected his job performance and ultimately led to termination of his employment. Tr. at 42-54.

Therefore, considering there are ambiguities in Dr. Barlow's report regarding Plaintiff's memory and cognitive deficits, on remand the ALJ, at the very least, should contact Dr. Barlow and request a clarification of his opinion regarding Plaintiff's memory and cognitive deficits and an explanation of how, despite his suspicions of Plaintiff's possible malingering, Dr. Barlow concluded that Plaintiff would be off task for 20% or more of any workday. *Hill v. Astrue*, No. 1:11-CV-0505 MAT, 2013 WL 5472036, at *9 (W.D.N.Y. Sept. 30, 2013) (a remand was required

---

[5] Even though the ALJ disagreed with Dr. Hartman's assessment of Plaintiff's limitations as mild because they "warranted more severe limitations," Dr. Hartman's observations of Plaintiff during the examination and references to Plaintiff's frequent headaches, memory loss, and overall worsening of the cognitive problems was, nonetheless, consistent with the record. Tr. at 307-08.

so that the ALJ could contact Plaintiff's physician, whose report contained ambiguities, and request an explanation of Plaintiff's test scores).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No.13) is DENIED, and the matter is REMANDED for further administrative proceedings consistent with this Decision and Order pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: January 24, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court